UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SELENA WITCHER,

               Plaintiff,

      - against -

NEW YORK CITY DEPARTMENT OF
EDUCATION, COLLIN WOLFE,
LORENA MORENO, and VICTORIA
WALTERS,

               Defendants.

**ORDER**

21 Civ. 7750 (PGG) (SN)

---

PAUL G. GARDEPHE, U.S.D.J.:

        In this action, pro se Plaintiff Selena Witcher – a former New York City public

school teacher – raises discrimination and retaliation claims under the Americans with

Disabilities Act ("ADA") against the New York City Department of Education ("DOE"), Dr.

Collin Wolfe, Dr. Lorena Moreno (collectively, the "DOE Defendants"), and Victoria Walters.

(Third Am. Cmplt. ("TAC") (Dkt. No. 44))  Witcher also asserts claims under the New York

State Human Rights Law (the "NYSHRL") and the New York City Human Rights Law (the

"NYCHRL"), and for intentional and/or negligent infliction of emotional distress.  (Id.)

Witcher's claims arise from disability discrimination and retaliation she allegedly suffered at

Public School 53 (the "School") during the 2020-2021 school year.  (Id. ¶ 7)  Wolfe was the

School's Principal and Moreno was the School's Assistant Principal during the relevant time

period, and Walters was the School's Union Federation of Teachers ("UFT") chapter leader.

(See TAC (Dkt. No. 44) at 8)[1]

---

[1]  The page numbers of documents referenced in this Order correspond to the page numbers
designated by this District's Electronic Case Files ("ECF") system.

The TAC was filed on March 24, 2022.  (Id.)  On April 25, 2022, the DOE

Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (DOE Def.

Mot. (Dkt. No. 48))  Walters filed her Rule 12(b)(6) motion on April 28, 2022.  (Walters Mot.

(Dkt. No. 50))  On May 2, 2022, this Court referred Defendants' motions to Magistrate Judge

Sarah Netburn for a Report and Recommendation ("R&R").  (Dkt. No. 52)

On January 12, 2023, Judge Netburn issued an R&R recommending that

Defendants' motions be granted in their entirety.  (R&R (Dkt. No. 63))

For the reasons stated below, the R&R's recommendations will be adopted, and

Defendants' motions to dismiss will be granted.

## BACKGROUND[2]

### I.    FACTS

Witcher was employed by the DOE as a probationary teacher for three years.

(TAC (Dkt. No. 44) ¶ 1)  During the 2019-2020 school year, Witcher – then working at the

School – received three evaluations from Assistant Principal McKinsley.  She "received a total

score of 3, which [indicates that she] is an effective teacher."  (Id. ¶¶ 2-4)

At some point prior to September 23, 2021, Witcher requested a "reasonable

accommodation" allowing her to work remotely from her home due to her obesity, which is a

COVID-19 risk factor.  Plaintiff has not disclosed when she requested the accommodation.  DOE

granted her that accommodation on September 23, 2021.  (Id. ¶ 5)  Witcher informed Principal

---

[2]  Because the parties have not objected to Judge Netburn's factual statement, this Court adopts it in full.  See Silverman v. 3D Total Solutions, Inc., 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts [the factual statement] in full.").

Wolfe of the accommodation that same day.  (Id.)  Witcher alleges that after she obtained the accommodation, Wolfe and Moreno repeatedly retaliated against her over the course of the 2021-22 school year.  Their acts of retaliation culminated in her termination on August 8, 2021.

On October 5, 2020, Principal Wolfe falsely accused Witcher "of not planning with [her] co-teacher or posting assignments to [her] Google Classroom."  (TAC (Dkt. No. 44) ¶ 6)

In an October 26, 2020 email to Witcher, Wolfe stated that a complaint had been filed against Witcher and scheduled a virtual meeting for October 28, 2020.  (Id. ¶ 7)  During that meeting, Wolfe provided Witcher with a "'friendly reminder'" about her remaining vacation days, but never mentioned any complaint.  (Id. ¶ 9)  Wolfe later sent Witcher a "disciplinary write-up" that "mischaracterized" the October 28, 2020 meeting and made "false allegations that [Witcher] was not punctual."  (Id. ¶ 10)

On November 30, 2020, Witcher was reassigned from a "4th grade integrated class teacher . . . to a 1st grade self-contained special education teacher," which Witcher describes as a "more demanding" teaching assignment.  (Id. ¶ 11)  Witcher alleges that this action was a demotion and "a retaliatory response to [her] accommodation," noting that "Principal Wolfe did not provide a reason for the change."  (Id.)  As a result of this change in Witcher's responsibilities, Assistant Principal Moreno became her new direct supervisor.  (Id.)

At a December 22, 2020 meeting with Witcher and a UFT representative, Assistant Principal Moreno told Witcher that parents were complaining that Witcher "was not signing into Google Classroom or posting assignments."  (Id. ¶ 13)  Witcher claims that these allegations are false and that Moreno never provided any parent complaints to her.

At a March 12, 2021 meeting with Witcher and a UFT representative, Moreno again claimed that parents were complaining that Witcher was not logging on or posting work to Google Classroom.  She did not provide any parent complaints to Witcher.  (Id. ¶ 17)  Although Moreno had administrator access to Witcher's Google Classroom, Moreno threatened to issue a disciplinary write-up to Witcher for not providing Moreno with teacher access.  (Id.)  Later that day, Witcher sent an email to DOE's Office of Equal Opportunity ("OEO") complaining about Wolfe and Moreno's "misconduct," and requesting that DOE investigate.  (Id. ¶¶ 18, 27)

At a March 15, 2021 meeting, Wolfe informed Witcher that she would not be offered tenure.  (Id. ¶ 20)  Wolfe did not provide a reason for this decision and did not permit Witcher to "submit a portfolio to demonstrate [her] teaching experience."  Witcher claims that under the "[UFT] contract and DOE policy" she has a right to submit such a portfolio.  (Id.)  In a March 16, 2021 email to DOE Superintendent Harry Sherman, Witcher states that she has suffered "harassment and retaliation from [Wolfe and Moreno] . . . which culminated in [Witcher] not receiving tenure."  (Id. ¶ 21)  On March 22, 2021, Witcher filed a second complaint about Moreno and Wolfe with the OEO.  (Id. ¶ 22)

In a March 26, 2021 email to Witcher, Moreno accused her not providing synchronous learning days on Google Classroom.  (Id. ¶ 23)  Witcher asserts that this allegation is false and that Google Classroom "logged all of [her] instruction."  (Id.)  She further alleges that "whenever she experienced technical difficulties, [she] informed" Moreno.  (Id.)  Later that day, Plaintiff filed another complaint with the OEO regarding Wolfe and Moreno's "continued [] harras[ment] and retaliat[ion] against" Witcher.  (Id. ¶ 24)

On March 28, 2021 Witcher emailed Superintendent Sherman requesting to be transferred to another school due to Wolfe and Moreno's "harassment and retaliation."  (Id. ¶ 25)

On April 8, 2021, Moreno issued a disciplinary write-up to Witcher concerning her alleged failure to provide Moreno with access to Witcher's Google Classroom.  (Id. ¶ 26)

On April 25, 2021 and April 29, 2021, Wolfe and Moreno requested that Witcher provide Moreno with access to Witcher's Google Classroom, so that Moreno could conduct a teacher evaluation.  Witcher claims that these requests violate DOE guidelines.  (TAC (Dkt. No. 44) ¶¶ 28, 29, 34)

On May 6, 2021, the DOE Office of Equal Opportunity informed Witcher that she was under investigation for discrimination pursuant to a race-based complaint filed by Moreno.  According to Witcher, Moreno's complaint was based on Witcher correcting Moreno's pronunciation of Witcher's name.  (Id. ¶¶ 30, 33)

On June 1, 2021, Wolfe emailed Witcher a "probation contract due to not granting [her] tenure and requested [that] it be signed by 11:00 a.m. the same day it was sent."  (Id. ¶ 31)  Witcher does not indicate whether she signed the contract.

On June 2, 2021, Witcher sent another email to Superintendent Sherman requesting a transfer due to Wolfe and Moreno's "harassment and retaliation."  (Id. ¶ 32)

On June 7, 2021, Wolfe informed Witcher that a teaching evaluation form was "not executed" because of her refusal to provide Moreno with access to Witcher's Google Classroom.  (Id. ¶¶ 34, 37)

On July 14, 2021, DOE's Office of Equal Opportunity issued a finding that Witcher had racially discriminated against Moreno in correcting Moreno's pronunciation of Witcher's name.  OEO made a disciplinary referral to Principal Wolfe.  (Id. ¶¶ 33, 38)

On August 8, 2021, and without explanation, Wolfe discontinued Witcher's probationary term as a teacher at the School.  (Id. ¶ 39)

On September 30, 2021, Witcher learned that DOE was investigating allegations that she had "verbal[ly], corporal[ly], and physical[ly] abuse[d]" students.  (Id. ¶ 40)

On February 20, 2022, DOE informed Witcher that – because of her alleged abuse of students – DOE could no longer employ her.  (Id. ¶ 41)  Witcher asserts that the abuse allegations are false and were fabricated by Moreno and Wolfe.  According to Witcher, there is no record that any alleged abuse of students was reported to DOE or to the New York State Office of Children and Family Services.  (Id.)

Witcher asserts that Moreno and Wolfe "used their power as administrators" to harass Witcher after she "received an accommodation for her disability," and retaliated against her after she reported their harassment.  (Id. at 15)  Witcher also asserts that UFT representative Walters failed to properly represent her.  (Id.)

## II.   **PROCEDURAL HISTORY**

The Complaint was filed on September 15, 2021 (Dkt. No. 2); the Amended Complaint was filed on October 13, 2021 (Dkt. No. 15); and the Second Amended Complaint was filed on November 16, 2021.  (Dkt. No. 17)  On March 24, 2022 – in response to motions to dismiss filed by the Defendants on February 9 and 10, 2022 (Dkt. Nos. 29, 30), Witcher filed the Third Amended Complaint ("TAC").  (TAC (Dkt. No. 44))  On April 25, 2022, the DOE Defendants moved to dismiss the TAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (DOE Def. Mot. (Dkt. No. 48))  Walters filed her Rule 12(b)(6) motion on April 28, 2022. (Walters Mot. (Dkt. No. 50))  On May 2, 2022, this Court referred Defendants' motions to Magistrate Judge Netburn for an R&R.  (Dkt. No. 52)  On January 12, 2023, Judge Netburn issued a 13-page R&R recommending that Defendants' motions to dismiss be granted.  (R&R (Dkt. No. 63))

## DISCUSSION

## I.      LEGAL STANDARDS

### A.      Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Inv. Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)). A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in original) (quoting Vega v. Artuz, 97 Civ. 3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error." IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., 2003 WL 43367, at *1 (S.D.N.Y.

Jan. 6, 2003) and Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan, 806 F. Supp. 380,

382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008)

("Reviewing courts should review a report and recommendation for clear error where objections

are merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the original

petition." (quotation marks and citations omitted)).

   "Courts generally do not consider new evidence raised in objections to a

magistrate judge's report and recommendation." Tavares v. City of New York, d2011 WL

5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (citation omitted).  "The submission of new evidence

following [a magistrate judge's R&R] is merited only in rare cases, where the party objecting . . .

has offered a most compelling reason for the late production of such evidence, or a compelling

justification for [the] failure to present such evidence to the magistrate judge." Fischer v.

Forrest, 286 F. Supp. 3d 590, 603 (S.D.N.Y. 2018), aff'd, 968 F.3d 216 (2d Cir. 2020) (quotation

marks and citations omitted).  Similarly, courts do not consider "'new arguments raised in

objections to a magistrate judge's report and recommendation that could have been raised before

the magistrate but were not.'"  United States v. Gladden, 394 F. Supp. 3d 465, 480 (S.D.N.Y.

2019) (quoting Hubbard v. Kelley, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)).

  **B.**  **Rule 12(b)(6) Motion to Dismiss**

   "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the

claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft 'to sho[w] that the pleader is entitled to

relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)).

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," (Id. at 555), and a plaintiff's claims must be "plausible on [their] face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quotation marks omitted) (quoting Twombly, 550 U.S. at 557)  Moreover, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." Id. at 570. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).  A complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

In resolving a motion to dismiss, a court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily." Bldg. Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012) (quotation marks and citation omitted).  However, "[w]here . . . the allegations pled in the complaint are contradicted by documents on which the complaint relies[,]

the reviewing court need not accept as true an allegation pled nor draw inferences in its favor." Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York, 107 F. Supp. 3d 323, 331 (S.D.N.Y. 2015), aff'd sub nom. Alexander v. Bd. of Educ. of City of New York, 648 F. App'x 118 (2d Cir. 2016) (quotation marks and citation omitted).  Moreover, allegations raised for the first time in an opposition brief cannot defeat a motion to dismiss, because allegations in an opposition brief do not amend a complaint.  See Capers v. Kirby Forensic Psychiatric Ctr., 2016 WL 817452, at *2 (S.D.N.Y. Feb. 25, 2016) (citing O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.")).

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'"  Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)).  "However, although pro se filings are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' a pro se complaint must still 'plead sufficient facts to state a claim to relief that is plausible on its face.'"  Wilder v. U.S. Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (citations omitted).  Moreover, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact,'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)), and "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,'" even where a plaintiff is proceeding pro se, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

II.    **ANALYSIS**

A.    **Defendant Walters' Motion to Dismiss**

The TAC alleges that Defendant Walters, as the UFT representative for the

School, failed to properly represent Witcher in her interactions with the DOE Defendants.  (TAC

(Dkt. No. 44) at 15)  The TAC does not assert a cause of action against Walters, but Judge

Netburn considers whether Witcher has pled a claim against Walters for a violation of the ADA,

or for breach of the duty of fair representation.  (R&R (Dkt. No. 63) at 7-8)

Walters argues that Witcher fails to state a claim against her, and that this Court

lacks subject matter jurisdiction over any fair representation claim asserted against her.  (Walters

Br. (Dkt. No. 51) at 11-15)

As to Walters's potential liability under the ADA, Judge Netburn notes that

Walters is a union representative, and therefore had "no ability to hire, fire or direct" Witcher.

(R&R (Dkt. No. 63) at 7)  Accordingly, Walters

> does not qualify as an employer under the ADA, and Plaintiff has not pleaded any
> facts suggesting that Walters had any power over Plaintiff's employment,
> evaluations, or assignments such that she could be liable under state or local law.
> Thus, Plaintiff has stated no facts pertaining to Walters that would support any
> cause of action contained in the complaint.

(Id.)

To the extent that Witcher asserts a claim for the "breach of the duty of fair

representation" against Walters, Judge Netburn concludes that (1) this Court lacks subject matter

"jurisdiction over such claims brought by a public employee against her union"; and (2)

"individual union representatives are immune from suits for breach of the duty of fair

representation."   (Id. at 7-8 (citing Ford v. D.C. 37 Union Local, 1541, 579 F.3d 187, 188 (2d

Cir. 2009) (per curiam) (federal courts lack subject matter jurisdiction over duty of fair

representation claims brought by public employees; "this is the law of our Circuit"); Morris v.

Local 819, Int'l Bhd. of Teamsters, 169 F.3d 782, 784 (2d Cir. 1999) ("The Supreme Court has long held that 'union agents' are not personally liable to third parties for acts performed on the union's behalf."))

No party has objected to the R&R's recommendation that Witcher's federal claims against Walters be dismissed.  Indeed, in her objections, Witcher states that she "understands that this Court does not have jurisdiction over these claims. . . . [and that she] "voluntarily drops Ms. Walters as a Defendant in this case."  (Pltf. Obj. (Dkt. No. 66) at 1)

Accordingly, this Court will adopt the R&R's recommendation that Walters' motion to dismiss be granted.

### B.   DOE Defendants' Motion to Dismiss

#### 1.   ADA Discrimination Claim

Witcher claims that the DOE Defendants discriminated against her in violation of the ADA by disciplining her, denying her tenure, and terminating her employment through the probationary discontinuance, as described above.  (TAC (Dkt. No 44))

In moving to dismiss, the DOE Defendants argue that (1) "Plaintiff fails to plead that, despite her alleged disability, she was otherwise qualified to perform her requisite job functions"; (2) she fails to plead an adverse employment action "aside from her probationary discontinuance" because the other alleged actions did not result in "material changes to employment"; and (3) as to any alleged adverse employment actions, "the TAC contains no facts plausibly supporting a claim that [any adverse employment actions were] . . .  motivated by [Witcher's] purported disability."  (DOE Def. Br. (Dkt. No. 49) at 13-15)

Witcher responds that (1) she is qualified "to be a teacher and perform the essential functions of her job . . . [based on her teacher ratings,] credentials, and extensive

teaching experience"; (2) the TAC alleges two adverse employment actions for purposes of an

ADA discrimination claim, i.e., the March 15, 2021 denial of tenure and the August 8, 2021

probationary discontinuance; and (3) that discriminatory animus for these actions is

demonstrated by Wolfe's "reaction to learning of [her] accommodation," and the fact that the

DOE Defendants only "began to characterize [her] as a poor performer" and issuing her

disciplinary write-ups after she received her accommodation.  (Pltf. Opp. (Dkt. No. 58) at 7-10)

        Title I of the ADA prohibits discrimination on the basis of a disability with

respect to "employee compensation . . . and other terms, conditions, and privileges of

employment." 42 U.S.C. § 12112(a).  "The elements of a [discrimination] claim under the ADA

are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning

of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform

the essential functions of the job with or without reasonable accommodation; (4) she suffered an

adverse employment action; and (5) the adverse action was imposed because of her disability."

Davis v. New York City Dep't of Educ., 804 F.3d 231, 234-35 (2d Cir. 2015)

        In her R&R, Judge Netburn notes that:

> "[u]nder Iqbal and Twombly, then, in an employment discrimination case, a
> plaintiff must plausibly allege that (1) the employer took adverse action against
> [them] and (2) [their] race, color, religion, sex, [disability,] or national origin was
> a motivating factor in the employment decision."  Vega v. Hempstead Union Free
> School District, 801 F.3d 72, 86 (2d Cir. 2015) (discussing intent in the Title VII
> context).  "The facts required by Iqbal to be alleged in the complaint . . . . need
> only give plausible support to a minimal inference of discriminatory motivation."
> Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).  "An inference
> of discrimination can arise from . . . the employer's criticism of the plaintiff's
> performance in ethnically degrading terms; or its invidious comments about
> others in the employee's protected group; or the more favorable treatment of
> employees not in the protected group; or the sequence of events leading to the
> plaintiff's discharge."  Id. at 312.

(Id. at 8-9)

Judge Netburn concludes that Witcher has not alleged any facts that support an inference of discriminatory animus based on disability:

> Plaintiff alleges that she requested an accommodation (remote work), and it was granted. She then describes a string of incidents that follow in which her supervisors accused her of substandard job performance that ultimately culminated in her termination. But Plaintiff does not allege that any of these actions were motivated by her disability or accommodation. Accepting as true all of the facts pled in the complaint – including that Defendants Wolfe and Moreno's accusations were fabricated – and drawing all reasonable inferences therefrom, these actions do not evince any discriminatory intent on the basis of Plaintiff's disability, and therefore cannot constitute a claim under the ADA.

(Id.)

In her objections, Witcher argues that Judge Netburn ignores that "'the sequence of events leading to the plaintiff's discharge'" can give rise to an inference of discrimination. (Pltf. Obj. (Dkt. No. 66) at 2-3 (quoting Littlejohn, 795 F.3d at 312)) She also contends that Judge Netburn erred in ignoring the allegation in her opposition brief that "[i]n late September, shortly after she communicated the accommodation to Principal Wolfe[,] he contacted her on the cellphone and told her to 'watch out.'" (Pltf. Opp. (Dkt. No. 58) at 2; Pltf. Obj. (Dkt. No. 66) at 2-3) Witcher contends that the warning to "watch out" was a reference to the accommodation she had received. (Pltf. Opp. (Dkt. No. 58) at 9) This is the only statement which Witcher argues constitutes evidence of discriminatory intent. Witcher argues, however, that this alleged comment and the sequence of events leading to her termination create an inference of discrimination. (Pltf. Obj. (Dkt. No. 66) at 2-3)

Witcher made the same arguments in opposing the DOE Defendants' motion to dismiss. (See Pltf. Opp. (Dkt. No. 58) at 7-10) Accordingly, the Court reviews these objections for clear error. IndyMac Bank, F.S.B., 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008).

As an initial matter, Witcher's allegations regarding Wolfe's comment are not plausible, because she did not plead any such exchange with Wolfe over the four complaints she

has filed, and since then her accounts of what Wolfe said to her in late September 2020 have been inconsistent.

The TAC is replete with detailed factual allegations regarding Wolfe's alleged discriminatory statements and actions, including the dates that Wolfe engaged in this conduct. (See, e.g., TAC (Dkt. No. 44) ¶¶ 6, 7, 9-11, 20, 28-29, 31, 34, 37, 39)  But at no point in the four complaints that Witcher has filed – submitted between September 15, 2021 and March 24, 2022 (see Dkt. Nos. 1, 44) – did she ever allege that Wolfe – after he learned of her accommodation in September 2020 – told her to "watch out."  Indeed, she did not make this allegation until July 25, 2022, after the DOE Defendants filed their motion to dismiss arguing, inter alia, that "the TAC contains no facts plausibly supporting a claim that the disciplinary letters or Plaintiff's probationary discontinuance was motivated by her purported disability."  (DOE Def. Br. (Dkt. No. 49) at 15)

As discussed above, Judge Netburn concludes in her R&R that Witcher's disability discrimination claim against the DOE Defendants must be dismissed, because Witcher has not offered any evidence of "discriminatory intent on the basis of Plaintiff's disability." (R&R (Dkt. No. 63) at 8-9)  Accordingly, in her objections to the R&R, Witcher embellishes on the alleged late September 2020 call from Wolfe that she first mentioned in her opposition brief. In her objections, Witcher asserts that

> Defendant Wolfe threatened Ms. Witcher via telephone, telling her to "watch out" and stating that he was going to come after her job.  He also requested [that] Ms. Witcher still come physically to the school building, which she declined.

(Pltf. Obj. (Dkt. No. 66) at 2)

The allegations that Wolfe said that "he was going to come after [Witcher's] job," and that he demanded that she report to work at the School, are entirely new.  Witcher did not

make these allegations in any of her four complaints – the first of which was filed on September

15, 2021, and the last of which was filed on March 24, 2022 (Dkt. Nos. 1, 44) – and she did not

make these allegations in her July 25, 2022 opposition to the DOE Defendants' motion to

dismiss.  (Pltf. Opp. (Dkt. No. 58) at 2, 9)  She made these allegations for the first time in her

February 13, 2023 Objections (Dkt. No. 66), after the Magistrate Judge had found that she failed

to adequately allege discriminatory intent.  Moreover, Witcher has offered no explanation as to

why she neglected to include these highly significant allegations in her four complaints and her

opposition brief.

   In improperly raising these new allegations for the first time in her Objections,

Witcher is in effect seeking to amend her pleadings yet again.  "Although leave to amend should

be liberally granted, it may properly be denied in cases of 'undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc.'"  Kant v. Columbia Univ., 2010 WL 807442, at *4 (S.D.N.Y. Mar. 9, 2010)

(quoting Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2007))

   Given the sequence of events described above, Witcher's new allegations are

indicative of bad faith, and cannot be used to defeat the DOE Defendants' motion to dismiss.

See Kant, 2010 WL 807442, at *7 ("Kant's unexplained new recollection concerning this critical

aspect of his [claims] . . . – first asserted ten months after [the] original complaint was filed and

after Defendant had moved to dismiss . . . – strongly suggests bad faith."); Optionality

Consulting PTE. LTD. v. Edge Tech. Grp. LLC, 2021 WL 310942, at *5 (S.D.N.Y. Jan. 29,

2021) ("Plaintiff's new allegations, squarely fitting within the statute of frauds, leads the Court to

believe that they are not being forth in good faith.  Plaintiff's unexplained recollection of these

critical facts [after resolution of a motion to dismiss] . . . cannot be reconciled with the Original

Complaint.").

Even if Witcher's new allegations were plausible, they could not be considered

here, because they were not presented to Judge Netburn. See Tavares, 2011 WL 5877548, at *2

("Courts generally do not consider new evidence raised in objections to a magistrate judge's

report and recommendation."); Fischer, 286 F. Supp. 3d at 603 (new evidence not considered

absent "a most compelling reason for the late production of such evidence, or a compelling

justification for [the] failure to present such evidence to the magistrate judge") (citations and

quotation marks omitted).

Having reviewed this portion of the R&R, this Court finds no clear error in Judge

Netburn's conclusion that Witcher has not alleged facts sufficient to give rise to an inference of

discrimination based on her disability.  Accordingly, Plaintiff's objection on this point is

overruled, and the recommendation that this claim be dismissed will be adopted.

## 2.      **Failure to Accommodate Claim**

Witcher also alleges that the DOE Defendants failed to accommodate her

disability under the ADA.  (TAC (Dkt. No. 44) at 5)  In arguing for dismissal of this claim, the

DOE Defendants argue that Witcher received her requested accommodation for her alleged

obesity disability – the ability to work remotely during the COVID-19 pandemic – and that aside

from checking off the box on the form complaint for failure to accommodate a disability, "the

TAC lacks any allegations supporting a failure to accommodate claim."  (DOE Def. Br. (Dkt.

No. 49) at 16)

To the extent that Witcher premises her failure to accommodate claim on her

March 28, 2021 email to Superintendent Sherman referencing her anxiety and depression and

requesting a transfer to another school, the DOE Defendants argue that she has failed "to plead

that [she] requested [this] accommodation based on any purported disability."  (Id.)  In her

opposition, however, Witcher argues that in her email to the Superintendent, "she wrote that it is

imperative to move to another building because of [her] rising anxiety levels and depression[]

[and thus made] an explicit mention of her disability."  (Pltf. Opp. (Dkt. No. 58) at 14-15)

   In recommending that Witcher's failure to accommodate claim be dismissed,

Judge Netburn notes that under "the ADA, a 'plaintiff states a prima facie failure to

accommodate claim by demonstrating that (1) plaintiff is a person with a disability under the

meaning of the ADA; (2) an employer covered by the statute had notice of [their] disability; (3)

with reasonable accommodation, plaintiff could perform the essential functions of the job at

issue; and (4) the employer has refused to make such accommodations.'"  (R&R (Dkt. No. 63) at

9 (quoting McMillan v. City of New York, 711 F.3d 120, 125-26 (2d Cir. 2013)))

   Judge Netburn finds that

> [t]he only accommodation discussed in Plaintiff's complaint is the ability to work
> from home pursuant to her stated disability of obesity.  This accommodation was
> granted to her on September 23, 2020, before any of the events giving rise to this
> complaint.
>
> Plaintiff's brief in opposition argues for the first time that the DOE, via
> Superintendent Sherman, failed to accommodate her anxiety and depression by
> not transferring her to another school.  Plaintiff's complaint contains a cursory
> allegation that [the DOE] Defendants['] actions caused her anxiety and
> depression, but nowhere does she claim that these are disabling within the
> meaning of the ADA or that Superintendent Sherman – or anyone else at DOE –
> was on notice of these disabilities.  Plaintiff also does not allege that transfer
> would be a reasonable accommodation.  Therefore, Plaintiff's new claim could
> not have been asserted based on the facts alleged in the complaint and should be
> dismissed.

(Id. at 10)

   In her objections, Witcher contends that Judge Netburn "failed to consider facts

asserted in her opposition, i.e., that she "emailed the Superintendent on March 28, 2021 . . .

[putting him] on notice of [her] disabilities of anxiety and depression." (Pltf. Obj. (Dkt. No. 66) at 3) Because this objection is a rehashing of arguments Witcher made in her opposition brief, this Court reviews this portion of the R&R for clear error only. See IndyMac Bank, F.S.B., 2008 WL 4810043, at *1.

Having reviewed this portion of the R&R, this Court finds no clear error in Judge Netburn's conclusion that Witcher has not adequately alleged that her anxiety and depression were disabling within the meaning of the ADA, much less that anyone at DOE was aware that she suffered from such disabilities. There is no indication in any of Witcher's numerous pleadings that when she mentioned her anxiety and depression to Superintendent Sherman, she indicated that these conditions rose to the level of a disability under the ADA. See Murtha v. New York State Gaming Comm'n, 2019 WL 4450687, at *9 (S.D.N.Y. Sept. 17, 2019) ("Merely having an impairment is not sufficient to trigger the ADA's protections. The statutory definition is not satisfied unless a plaintiff also establishes that the impairment affects activity that constitutes 'major life activity' and 'substantially limits' the identified major life activity 'compared to most people in the general population.'") (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). Plaintiff's objection on this point is overruled, and the recommendation that Witcher's failure to accommodate claim be dismissed will be adopted.

### 3. ADA Retaliation Claim

The DOE Defendants argue that Witcher's allegations do not state a claim for retaliation under the ADA because – aside from her request for a remote work reasonable accommodation – Witcher has not alleged that she engaged in any protected activity. (DOE Def. Br. (Dkt. No. 49) at 19-21) The DOE Defendants further argue that the only allegations that could qualify as "material[ly] adverse employment actions" are the DOE Defendants' decisions

not to offer Witcher tenure and to discontinue her probationary employment.  As to these allegations, the DOE Defendants contend that the TAC does not adequately plead retaliatory animus.  (Id.)

Plaintiff argues that, in addition to her request for a remote work reasonable accommodation, the TAC pleads the following protected activity:  (1) Witcher's March 22, 2021 complaint regarding Wolfe and Moreno's conduct which "hinged on the fact that she was working remotely and that if she had to continue working from home, she feared that they would continue to discriminate against her"; (2) her March 23, 2021 complaint stating that "it will be imperative to be removed from the building due to my anxiety levels increasing along with my depression"; and (3) her March 26, 2021 complaint which – although it does not mention any disability – is sufficiently proximate in time to her March 22, 2021 complaint such that the two complaints "should be considered together."  (Pltf. Opp. (Dkt. No. 58) at 11-12)  Witcher further argues that – as to her remote work accommodation – "the subsequent adverse employment action was the denial of tenure following numerous disciplinary write-ups."  (Id. at 12)  As to causation, Witcher asserts that causation can be inferred based on temporal proximity alone. (Id.)  She also argues that the "disciplinary write-ups" were pretextual and were intended to justify the eventual denial of tenure.  (Id. at 12-14)

In her R&R, Judge Netburn notes that to state a claim for retaliation under the ADA, a complaint must plead that "'(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.'"  (R&R (Dkt. No. 63) at 10 (quoting Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 148 (2d Cir. 2002)))  Protected activity includes

opposition to "'any act or practice made unlawful by' [the ADA.]"  (Id. (quoting Clark v. Jewish

Childcare Ass'n, Inc., 96 F. Supp. 3d 237, 261 (S.D.N.Y. 2015))).

   Judge Netburn finds that Witcher's retaliation-related

> allegations are thin.  She alleges that her "demotion" to a lower grade "was a
> retaliatory response to [her] accommodation because Principal Wolfe did not
> provide a reason for the change."  TAC, ¶ 11.  But Plaintiff pleads no facts to
> support that conclusory statement, and the absence of evidence is not a basis to
> infer discriminatory intent.  Similarly, she states that she filed complaints with
> DOE about Defendants Wolfe and Moreno but does not allege that the complaints
> qualified as a protected activity, that is, that Plaintiff was complaining about
> disability discrimination.  The most Plaintiff alleges is that she filed one
> complaint because Wolfe and Moreno "continued to harass and retaliate against
> [her] with emails, write-ups, and meetings about false allegations."  TAC, ¶ 24.
> See also TAC, ¶ 14 (raising concerns to the union about her "student roster and
> making the DOE online curriculum compatible with Google Classroom").  These
> allegations are insufficient to state a claim for retaliation under the ADA.

(Id. at 11)  Judge Netburn recommends dismissal of Plaintiff's ADA retaliation claim based on

Plaintiff's failure to allege protected activity and the absence of evidence supporting a causal link

between protected activity and adverse action.

   In her objections, Plaintiff contends that Judge Netburn ignores the "temporal link

between the protected activity and the adverse actions," "which creates an inference of

discrimination."  (Pltf. Obj. (Dkt. No. 66) at 3-4)  Witcher further argues that the R&R ignores

her description of her complaints to the DOE, which contained "allegations of disability

discrimination."  (Id. at 4)

### a. Protected Activity

   "'Protected activity' is 'action taken to protest or oppose statutorily prohibited

discrimination.'"  Natofsky v. City of New York, 921 F.3d 337, 354 (2d Cir. 2019) (quoting

Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000)).  "'[R]equests for accommodation

[also] constitute protected activity under the ADA.'"  Gomez v. NYHS Design Inc., 2022 WL

4284143, at *6 (S.D.N.Y. Sept. 16, 2022), report and recommendation adopted, 2022 WL

6175174 (S.D.N.Y. Oct. 6, 2022) (quoting Pacheco v. Park S. Hotel, LLC, 2014 WL 292348, at *4 (S.D.N.Y. Jan. 27, 2014)).

   The parties disagree as to whether the following communications constitute "protected activity":  (1) Witcher's March 22, 2021 "complaint [to] the DOE regarding [Wolfe and Moreno]" (TAC (Dkt. No. 44) ¶ 22); (2) Witcher's March 23, 2021 email to Superintendent Sherman stating that "'it will be imperative to be removed from the building due to my anxiety levels rising along with my depression'" (Pltf. Opp. (Dkt. No. 58) at 12); and (3) Witcher's March 26, 2021 "misconduct complaint to the [DOE] . . . [stating that she] felt uncomfortable with [Wolfe and Moreno] . . because they continued to harass and retaliate against [her] with emails, write-ups, and meetings about false allegations."  (TAC (Dkt. No. 44) ¶ 24; see DOE Def. Br. (Dkt. No. 49) at 19-20; Pltf. Opp. (Dkt. No. 58) at 11-12)  In her opposition brief, Witcher further alleges that in her March 22, 2021 complaint she wrote:  "I am scared that if I return back to the building in September, the harassment and retaliation will get worse due to experiencing it from home while being home remotely from medical."  (Pltf. Opp. (Dkt. No. 58) at 11-12)

   As to her March 22, 2021 complaint, Witcher argues that it

> is a clear indicator that she was claiming that the harassment and retaliation
> hinged on the fact that she was working remotely and that if she had to continue
> to work from home, she feared [Wolfe and Moreno] would continue to
> discriminate against her.  She was working from home due to her disability of
> obesity, so there is a connection between the remote accommodation and her
> protected class.

(Id.)  Witcher further argues that while the "March 26, 2021 complaint does not explicitly specify that the retaliation and harassment were connected to her disability, [] its temporal proximity to the March 22 complaint means that the two complaints should be considered together."  (Id.)

Witcher's March 22, March 23, and March 26, 2021 communications do not constitute protected activity.  Contrary to Witcher's argument, there is no indication in any of her filings that her March 22 and 26, 2021 complaints tied any of Moreno or Wolfe's conduct to her alleged obesity disability.  For example, her statement that she feared retaliation if she returned to the school building does not mention her disability.  While Witcher plainly expresses concern about possible "retaliation and harassment," "'[c]omplaints centered on general allegations of harassment [or other mistreatment] unrelated to [a plaintiff's disability] are not protected activity.'"  See Vargas v. Reliant Realty, 2014 WL 4446165, at *6 (S.D.N.Y. Sept. 9, 2014) (quoting Thomas v. iStar Fin., Inc., 438 F.Supp.2d 348, 365 (S.D.N.Y. 2006), aff'd, 629 F.3d 276 (2d Cir. 2010)).  Likewise, Witcher's March 23, 2021 complaint to Superintendent Sherman that it was "imperative [she] be removed from the building due to [her] anxiety levels increasing along with [her] depression" (Pltf. Opp. (Dkt. No. 58) at 11-12), does not assert any statutorily prohibited discrimination.  And for the reasons stated above, Witcher's generalized complaints about her alleged anxiety and depression, and her request for a transfer, do not qualify as requests for an accommodation.[3]

As to Witcher's request for a remote work accommodation, the law is clear that "'requests for accommodation constitute protected activity under the ADA.'"  Gomez, 2022 WL 4284143, at *6 (quoting Pacheco, 2014 WL 292348, at *4) (alteration omitted).  The record does

---

[3]  Witcher does not substantively argue that her (1) March 12, 2021 "email to the [DOE] . . . to file a complaint and request[] that they investigate the misconduct of [Wolfe and Moreno]"; and (2) her March 16, March 28, and June 2, 2021 emails to Superintendent Sherman mentioning her anxiety and depression and requesting a transfer (see TAC (Dkt. No. 44) ¶¶ 15, 18, 21, 25, 31) constitute protected activity.  (See Pltf. Opp. (Dkt. No. 58) at 11-13)  As with the complaints discussed above, these communications do not constitute protected activity because Witcher did not (1) complain of discrimination based on her disability or (2) request an accommodation. Natofsky, 921 F.3d at 354; Murtha, 2019 WL 4450687, at *9.

not disclose when Witcher made her request for a remote work accommodation, however, and DOE's approval of her request for an accommodation is not protected activity, because Witcher took "no part" in that activity.  See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) ("[T]he EEOC's issuance of a right-to-sue letter – an action in which the employee takes no part – is [not] protected activity of the employee.").

In sum, the only protected activity that Witcher has plausibly alleged is her initial request for a remote work accommodation, and there is no evidence in the record as to when Witcher made that request.

### b.   Adverse Action and Causation

The DOE Defendants do not dispute that they had notice of Witcher's alleged obesity disability and her request for a remote work accommodation.  (See TAC (Dkt. No. 44) ¶ 5 ("A copy of the approval for [Witcher's] accommodation was sent to Principal Wolfe.")) Accordingly, the Court considers whether "'an adverse decision or course of action was taken against plaintiff'" and, if so, whether "'a causal connection exists between the protected activity and the adverse action.'"  (R&R (Dkt. No. 63) at 10 (quoting Weixel, 287 F.3d at 148))

In the context of an ADA retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  Vega, 801 F.3d at 90 (Title VII) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)); see also Richards v. New York City Dep't of Educ., 2022 WL 329226, at *16 (S.D.N.Y. Feb. 2, 2022) (applying the same standard in the ADA context). "'This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination' and is not limited to discriminatory actions that affect the terms and conditions of employment."  Richards, 2022 WL 329226, at *16 (quoting Vega, 801 F.3d 7 at

90).  Nonetheless, "it is important to separate significant from trivial harms."  White, 548 U.S. at

68.  "An employee's decision to report discriminatory behavior cannot immunize that employee

from those petty slights or minor annoyances that often take place at work and that all employees

experience."  Id.

      "As for causation, a plaintiff must plausibly plead a connection between the

[adverse action] and [her] engagement in protected activity."  Vega, 801 F.3d at 90 (citing 42

U.S.C. § 2000e-3(a)).  "A retaliatory purpose can be shown indirectly by timing:  protected

activity followed closely in time by adverse employment action."  Id.  "The causation

requirement for a [] retaliation claim requires a plaintiff to plead 'but-for' causation."  Hongmian

Gong v. City Univ. of New York, 2019 WL 952340, at *7 (S.D.N.Y. Feb. 27, 2019).  "To allege

but-for causation, a plaintiff need only show that 'the adverse action would not have occurred in

the absence of the retaliatory motive.'"  Miller-Sethi v. City Univ. of New York, 2023 WL

419277, at *7 (S.D.N.Y. Jan. 26, 2023) (quoting Vega, 801 F.3d at 90).

      Witcher alleges that on November 2, 2020, Wolfe sent her a disciplinary write-up

making "false allegations that [she] was not punctual . . . [and falsely] claim[ing] that [she] did

not have any more personal time."[4]  (TAC (Dkt. No. 44) ¶ 10)  Disciplinary write-ups have been

found to constitute adverse actions in the retaliation context.  Richards, 2022 WL 329226, at *19

("The June 20, 2019 disciplinary meeting and letter and the August 19, 2019 discipline also rise

to the level of an adverse employment action in the retaliation context.");  Ahmad v. New York

City Health & Hosps. Corp., 2021 WL 1225875, at *26 (S.D.N.Y. Mar. 31, 2021) ("A slew of

---

[4]  The Court does not address Wolfe's alleged late-September 2020 "watch-it" call to Witcher
because – as explained above – Witcher's account of that call was not pled in her four
complaints, and her discussion of that alleged call in her opposition brief and objections has been
inconsistent and indicative of bad faith.

falsified disciplinary charges could certainly plausibly deter . . . [someone] from reporting discrimination.").

Witcher also alleges that on November 30, 2022, she was reassigned from a fourth-grade class to a first-grade special education class and that within "the profession, this move to a lower grade level and more demanding teaching environment is a demotion." (TAC (Dkt. No. 44) ¶ 11) This allegation likewise qualifies as an adverse action for purposes of a retaliation claim. See Oliver v. City of New York, 2022 WL 455851, at *26 (S.D.N.Y. Feb. 15, 2022), report and recommendation adopted in part, 2023 WL 2160062 (S.D.N.Y. Feb. 22, 2023) ("In the Second Circuit, 'negative evaluation letters, . . . reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to [a] classroom on [the] fifth floor which aggravated teacher's physical disabilities' may qualify as adverse employment actions for purposes of a retaliation claim.") (quoting Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006)); Alvarez v. New York City Dep't of Educ., 2021 WL 1424851, at *9-10 (S.D.N.Y. Apr. 15, 2021))

As to causation, Witcher's only argument is temporal proximity between the adverse actions and her receipt of the remote work accommodation. (Pltf. Opp. (Dkt. No. 58) at 12; Pltf. Obj. (Dkt. No. 66) at 3-4) Both of the above-described adverse actions occurred within about two months of Plaintiff's receipt of her remote work accommodation. (See TAC (Dkt. No. 44) ¶¶ 5-11) "Although 'temporal proximity alone will not be enough to support [Plaintiff's] claim on summary judgment,' it is sufficient at the pleading stage." Ahmad, 2021 WL 1225875, at *27 (quoting Huda v. New York City Health & Hosps. Corp., 2021 WL 1163975, at *1 (S.D.N.Y. Mar. 26, 2021)). And a two-month period between protected activity and an adverse

action is short enough to support an inference of retaliation for purposes of a motion to dismiss. Id. (finding that causation was adequately pled where there was a 2.5 month gap between protected activity and adverse actions); Huda, 2021 WL 1163975, at *7 ("A 'few months' is usually close enough.") (citing Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002)).

As discussed above, however, Witcher's receipt of a requested accommodation does not constitute protected activity. See Breeden, 532 U.S. at 273 ("[T]he EEOC's issuance of a right-to-sue letter – an action in which the employee takes no part – is [not] protected activity of the employee.")  And Witcher has not alleged when she requested a remote work accommodation because of the COVID-19 pandemic.  Given that the COVID-19 pandemic was felt in New York City as early as March 2020, it is possible that Witcher requested her accommodation long before September 2020.  Absent factual allegations as to when Witcher requested an accommodation, this Court cannot conclude that her "protected activity [was] followed [sufficiently] closely in time by adverse employment action" to raise an inference of retaliation.  Vega, 801 F.3d at 90.

Witcher's remaining allegations of adverse action took place later than November 2020 (TAC (Dkt. No. 44) ¶¶ 11-41), and do not demonstrate temporal proximity for the same reasons explained above.  Catanzaro v. City of New York, No., 2011 WL 335648, at *7 (S.D.N.Y. Jan. 25, 2011), aff'd, 486 F. App'x 899 (2d Cir. 2012) ("There the protected activity took place four months prior to the alleged adverse action, and where plaintiff relies on temporal proximity alone to establish retaliatory intent, the causal relationship is not established.")

For the reasons stated above, this portion of the R&R is adopted to the extent that the DOE Defendants' motion to dismiss will be granted as to Witcher's ADA retaliation claim.

### 4.     <u>State and City Law Claims</u>

Judge Netburn notes that

> "[u]nder 28 U.S.C. § 1367, a district court 'may decline to exercise supplemental jurisdiction over a claim' if it 'has dismissed all claims over which it has original jurisdiction.'" <u>Manhattan Telecomm. Corp. v. Cellco P'ship</u>, 2010 WL 11712984, at *2 (S.D.N.Y. Apr. 13, 2010) (quoting 28 U.S.C. § 1367(c)(3)). While this decision is discretionary, "[i]n general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." <u>Marcus v. AT&T Corp.</u>, 138 F.3d 46, 57 (2d Cir. 1998).

(R&R (Dkt. No. 63) at 11)  Judge Netburn therefore recommends that this Court "decline to exercise supplemental jurisdiction over any of Plaintiff's remaining state law claims."  (<u>Id.</u>) Having dismissed Witcher's federal claims, this Court agrees with Judge Netburn's recommendation.  Accordingly, this Court will decline to exercise supplemental jurisdiction over Witcher's pendent state law claims.

### C.     <u>Leave to Amend</u>

In recommending that this Court deny Plaintiff leave to amend, Judge Netburn sets out the relevant standard:

> Rule 15(a)(2) requires that leave to amend be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  "However, in determining whether leave to amend should be granted, the district court has discretion to consider, inter alia, the apparent futility of amendment." <u>Grace v. Rosenstock</u>, 228 F.3d 40, 53 (2d Cir. 2000) (internal citations and quotation marks omitted). . . . "[F]utility of amendment is not the only basis for denying leave to amend . . . . a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." <u>Carroll v. Trump</u>, 590 F. Supp. 3d 575, 578 (S.D.N.Y. 2022).

(<u>Id.</u> at 12)  Judge Netburn concludes that because Witcher has amended her complaint three times, and added factual allegations in her opposition brief, "it is unclear what further facts Plaintiff could plead that would save her federal causes of action," suggesting that any amendment would likely be futile . (<u>Id.</u>)  Judge Netburn concludes that allowing further amendment would cause "undue delay and prejudice to Defendants."  (<u>Id.</u>)

In her objections, Witcher requests that she be granted "one additional opportunity to amend."  (Pltf. Obj. (Dkt. No. 66) at 4)  She points out that she is now working with the New York Legal Assistance Group's ("NYLAG") <u>pro se</u> clinic, and that clinic personnel have helped her understand "that she needs to provide facts pertaining to each element of her various claims."  (<u>Id.</u>)

The TAC states, however, that it was "prepared with assistance by . . . [NYLAG's] Clinic for <u>Pro Se</u> Litigants."  (TAC (Dkt. No. 44) at 8 n.1)  Accordingly, there is no reason to believe that additional assistance from the NYLAG will permit Witcher to remedy the TAC's deficiencies.

And while this Court acknowledges Witcher's <u>pro se</u> status, her inability to plead her claims has caused extraordinary delay, and raised an issue as to whether she is proceeding in good faith.  Through four separate complaints, Witcher has not been able to plead a legally sufficient federal claim.  As discussed above, after the DOE Defendants highlighted defects in the TAC in their motion to dismiss, Witcher presented – without explanation – new allegations in her opposition brief, including that Defendant Wolfe had told her to "watch out" after learning that she had been granted a remote work accommodation.  (Pltf. Opp. (Dkt No. 58) at 2, 9)  After Judge Netburn issued an R&R finding her ADA claims insufficiently pled, Witcher added still more new factual allegations, including the startling allegation that Defendant Wolfe – after learning that Witcher had been granted a remote work accommodation – had told her that "he was going to come after her job."  (Pltf. Obj. (Dkt. No. 66) at 2)  Once again, Witcher offered no explanation as to why she had not included this allegation in any of her four complaints, or in her opposition brief.

The record here demonstrates that Plaintiff has not acted in good faith, and that her inability to plead a legally sufficient federal claim has caused undue delay and prejudice to Defendants.  There is no reason to believe that affording Plaintiff an additional opportunity to amend would be productive.  She has already had ample opportunity to allege facts sufficient to support a federal claim.  Green, 925 F.3d 281, 286 ("Because the Federal Rules command just one free pass, not seven, and because [plaintiff] did not have a good explanation for the last amendment, the district court did not abuse its discretion in denying [her] motion.")  Accordingly, this Court will adopt the R&R's recommendation that leave to amend be denied.

## CONCLUSION

For the reasons stated above, this Court adopts the R&R's recommendation that (1) Defendant Walter's motion to dismiss be granted; and (2) that the DOE Defendants' motion to dismiss be granted as to Plaintiff's ADA discrimination and retaliation claims.  This Court declines to exercise supplemental jurisdiction over Plaintiff's state and city law claims.  Leave to amend the Third Amended Complaint is denied.  The Clerk of Court is directed to terminate the motions (Dkt. Nos. 48, 50), to close this case, and to mail a copy of this order to pro se Plaintiff.

Dated: New York, New York
      March 23, 2023

SO ORDERED.

Paul G. Gardephe
United States District Judge

30